IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KENNETH WINSTON ASHFORD,** : <br> **Plaintiff** : <br> : <br> v. : <br> : <br> **OFFICER BRUCE BARTZ, et. al.,** : <br> **Defendants** : | Civil Action No. 1:04-cv-00642 <br> (Chief Judge Kane) |

# MEMORANDUM

Before the Court is a motion in limine filed by Defendants Bartz and Doellinger. (Doc. No. 103.) The only remaining contested issue[1] is whether evidence of Defendant Doellinger's separation from the Hellam Township Police Department due to criminal allegations of false reporting and disciplinary actions for misstatements made on his daily log, and the respective underlying facts of those incidents, is admissible on cross examination. For the reasons that follow, the Court finds that the motion in limine will be granted in part and denied in part.

## I. BACKGROUND

On March 28, 2002, Plaintiff was arrested for burglary at the Red Rose Lounge in York, Pennsylvania. Plaintiff alleges that he fell asleep while inside the Lounge and was not awakened until Defendant Officer Bartz kicked him in the face and head while Officers Eisenhart and Clevenger[2] looked on. According to Plaintiff, Defendant Officers Bartz and Doellinger then

---

[1]The motion in limine also seeks to preclude evidence of unrelated complaints of excessive force against Defendants Bartz and Doellinger, evidence of Defendant Bartz's termination, and evidence of litigation initiated by Defendants Bartz and Doellinger against the police department. (Doc. No. 103.) Because Plaintiff has agreed these issues will not be raised at trial, they need not be discussed in this memorandum.

[2]Officers Eisenhart and Clevenger were also named as defendants in this case, but due to a settlement agreement, no longer remain parties to this action.

1

transported Plaintiff out of the building, using his head "as a battering ram." Once Plaintiff was handcuffed and placed outside the building, Defendant Bartz allegedly brandished his gun, pointed it at Plaintiff's head, and threatened to shoot. Defendant Doellinger observed this conduct but did nothing to stop it. Another officer at the scene admonished Defendant Bartz to lower his weapon, which Defendant Bartz then did. Later, after Plaintiff had been placed in the holding cell, Defendant Bartz pushed his fist into Plaintiff's chest. (Doc. No. 1.)

Defendants' version of the facts differs dramatically. Defendants allege that multiple officers were called to the Red Rose Lounge to investigate a burglary. They observed a man attempt to exit the Lounge but turn back inside when he viewed the police outside the building. Defendants entered the building and came upon a closed door where they believed the burglar to be. They attempted to open the door but encountered strong resistance. The officers then forced the door open, resulting in a superficial injury to Plaintiff's face. Because the injury resulted in bloodshed, the officers followed Hellam Township Police Department policy by calling an EMS to address Plaintiff's injury. Defendants aver that Plaintiff was arrested and placed in custody for the burglary without further incident. (Doc. No. 106.)

At an unidentified time during his employment with the Hellam Township Police Department, Defendant Doellinger was disciplined for recording on his daily report that he was on general patrol when he was actually in the office preparing an accident report. (Doc. No. 104, at 5.) Additionally, in 2004, Defendant Doellinger was charged with "filing a false record involving truck inspections," and was terminated from employment. (Doc. No. 104, at 5.) A conviction did not result from the charges, however, and Defendant Doellinger was allowed to resign from the Hellam Township Police Department. (Doc. No. 104, at 5.) The disciplinary

records and criminal charges related to this accusation were expunged from his record.

Plaintiff seeks to inquire into both of Defendant Doellinger's alleged false statements, the discipline imposed on him, and his initial termination. Plaintiff argues that this line of questioning is probative of his character for truthfulness, and therefore is admissible on cross-examination. Fed. R. Evid. 608(b). Defendant contends that the evidence is irrelevant because it occurred after the events at issue in this case, and Defendant also argues that these instances are more prejudicial than probative.

## II.  DISCUSSION

At issue in this motion is whether specific instances of Defendant's misconduct, namely two instances of false statements while on the job as a police officer, as well as the discipline and initial termination from employment that arose from those instances, may be used to impeach a Defendant alleged to have committed excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment.

Plaintiff seeks to admit the evidence in question under Federal Rule of Evidence 608(b), which provides that "specific instances of the conduct of a witness . . . if probative of truthfulness or untruthfulness, [may] be inquired into on cross-examination" at the discretion of the court. Fed. R. Evid. 608(b). In using its discretion to allow evidence of a specific instance of conduct, a court should consider the importance of the testimony, the probable effect on the jury of the evidence, the character of the previous conduct, and the remoteness in time of the misconduct. United States v. Lundy, 416 F. Supp. 2d 325, 330-31 (E.D. Pa. 2005). Any admission under Rule 608 must also meet the requirements of Rule 403. Fed. R. Evid. 608(b) advisory committee's notes. It is notable that even if a specific instance is itself admissible, it

3

may only be "inquired into on cross-examination," extrinsic evidence to support the specific instance of misconduct, if denied by the witness, is inadmissible. Fed. R. Evid. 608(b); United States v. Bocra, 623 F.2d 281, 288 (3d Cir. 1980) (the cross-examiner must "take [the witness's] answer and would not be able to introduce rebuttal testimony"); see also United States v. Davis, 183 F.3d 231, 257 n.12 (3d Cir. 1999) ("[I]njection of extrinsic evidence not only runs afoul of Rule 608(b), but also sets the stage for a mini-trial regarding a tangential issue of dubious probative value that is laden with potential undue prejudice.").

A false statement on an official police report and on an internal police department document regarding the officer's daily work projects would indeed provide evidence into Defendant's character for untruthfulness. See Bocra, 623 F.2d at 288 ("The classic example of a permissible inquiry would be an incident in which the witness had lied."). The statements at issue were made within the past few years, and Defendant's testimony is integral to the case, which will almost certainly turn on who's account of the facts the jury believes. Moreover, the Third Circuit Court of Appeals has previously held that it "was *clearly proper*" to make analogous inquiries. Davis, 183 F.3d at 257 (emphasis added).

In Davis, the defendant made two false statements during his duties as a police officer which were admissible on cross-examination. He wrote an incorrect name in a police gas log, thereby appropriating police department gasoline for his personal use, and he also told an Internal Affairs officer he did not take a subway pass which was later found to be in his possession. Davis, 183 F.3d at 256. The misstatement made on the gas log in Davis is analogous to Defendant Doellinger's misstatement on his daily report. Both are internal documents submitted to the police department, and both indicate a false statement that was unlikely to be

the product of a mistake, although the Court acknowledges that recording one's daily activities incorrectly is more probable a mistake than incorrectly recording one's own name. Additionally, Davis's misstatement to the Internal Affairs officer is analogous to Defendant Doellinger's misstatement on a police report. In both instances, the police officer would have been aware of the importance of making accurate statements, particularly in Defendant Doellinger's case, since police reports are often relied upon by courts of law and seen as accurate, authoritative sources. For the reasons stated above and the obvious analogy to the Davis case, the Court finds that inquiry into Defendant Doellinger's misstatement on his daily report and the police report is admissible.

Although the charge alleging Defendant falsified a police report was expunged from his record, the Court does not agree that the fact of expungement renders examination on the subject of the statement improper. An expungement due to a settlement agreement is not evidence of an acquittal. E.g., Lundy, 416 F. Supp. at 333-34 (perjury charge dismissed and expunged as a result of participation in a pre-trial intervention program does not equate to an acquittal and is susceptible to cross-examination under Rule 608); see also Gilles v. Davis, 427 F.3d 197, 210-12 (3d Cir. 2005) (state-run "Accelerated Rehabilitative Disposition" program, which permits expungement of the criminal record upon completion of a probationary term, is not equivalent of acquittal and thus not a "favorable termination" under Heck).

Although the Court will allow inquiry on cross-examination into the facts of whether Defendant Doellinger lied in those two specific instances, it does not follow that Plaintiff may also mention or inquire into the discipline and termination that resulted from those instances. In Davis, the court clarified that while inquiry into the specific instances of untruthfulness would be

5

allowed, third party findings regarding the defendant's veracity in those instances were not admissible because they constituted extrinsic evidence and hearsay. Davis, 183 F.3d at 257 n.12 ("More precisely, the government cannot make reference to Davis's forty-four day suspension or that Internal Affairs found that he lied about the subway-pass incident. . . . If he denies that such events took place, however, the government cannot put before the jury evidence that he was suspended or deemed a liar by Internal Affairs."). The Committee Notes to Rule 608(b) echo Davis' ruling with an explicit statement, "It should be noted that the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act. . . . [It] prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of the impeachment." Fed. R. Evid. 608(b) advisory committee's notes. Applying these statements to the facts here, it is clear that any inquiry into Defendant Doellinger's termination or discipline would constitute extrinsic evidence, and is thus inadmissible.

### III. CONCLUSION

Defendant Doellinger's motion in limine will be granted in part and denied in part. Plaintiff may, on cross-examination, inquire into the alleged falsehoods made by Defendant Doellinger in stating he was on general patrol when he was actually in the office writing an accident report, and in making a false statement on a police record involving truck inspections. Plaintiff may not, however, introduce extrinsic evidence, a prohibition which includes mentioning the discipline or termination which resulted from those misstatements.

An order consistent with this memorandum follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KENNETH WINSTON ASHFORD,** : | |
| **Plaintiff** : | |
| : | Civil Action No. 1:04-cv-00642 |
| v. : | (Chief Judge Kane) |
| : | |
| **OFFICER BRUCE BARTZ, et. al.,** : | |
| **Defendants** : | |

## ORDER

**AND NOW**, this 30th day of July 2009, upon consideration of Defendants' motion in limine (Doc. No. 103), and Plaintiff's motion in limine (Doc. No. 101), **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's motion in limine (Doc. No. 101) is denied as moot.

2. Defendants' motion in limine (Doc. No. 103) is granted in part and denied in part. Inquiry into Defendant Doellinger's alleged false statements made on the police daily log and the police record involving truck inspections is admissible, but inquiry into the subsequent discipline or termination is not admissible.

3. In all other respects, Defendants' motion in limine (Doc. No. 103) is denied as moot.

/s Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania