IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH WINSTON ASHFORD, :
Plaintiff :
 :
 : Civil Action No. 1:04-cv-00642
v. : (Chief Judge Kane)
 :
OFFICER BRUCE BARTZ, et. al., :
Defendants :

## MEMORANDUM

Pending before the Court is Plaintiff Kenneth Ashford's motion for new trial. (Doc. No. 135.) Though Plaintiff never filed a brief in support of his motion[1], Defendants responded with a brief in opposition. (Doc. No. 136.) Plaintiff has not replied to Defendants' brief, thus the motion is deemed ripe for disposition. For the reasons that follow, the motion will be denied.

**I.     BACKGROUND**

On March 25, 2004, Plaintiff Kenneth Ashford, acting *pro se*, filed a complaint in this court alleging a violation of his rights under 42 U.S.C. § 1983. (Doc. No. 1.) Specifically, Plaintiff asserted that he was assaulted on March 28, 2002, when Defendant Officers Bruce Bartz, Scott Doellinger, Jacob Clevenger, and Rick Eisenhart arrested him for burglarizing the Red Rose Lounge. Plaintiff alleged that Defendant Bartz kicked him in the face and back at the time of his arrest for burglary, used his head as a "battering ram" to exit the Red Rose Lounge, and later punched him in the chest at the Hellam Township Police Department holding cell.

---

[1]According to Middle District of Pennsylvania Local Rule 7.5, a brief in support of a motion must be filed "within fourteen (14) days after the filing of any motion." M.D. Pa. L.R. 7.5. "If a supporting brief is not filed within the time provided in this rule the motion shall be deemed withdrawn." Id. Because Plaintiff never filed a brief in support of his two-page motion, the Court would be within its power to deem the motion withdrawn without ruling on the merits.

1

(Doc. No. 1 at 2; Doc. No. 119 at 1-2.) Plaintiff sustained "injuries [to his] face nose, teeth, mouth, back, and leg." (Doc. No. 1 at 1.) Plaintiff made no specific allegations of assault against the other officers present but sufficiently stated failure to intervene claims against them. (Id.)

After pretrial motions were denied, the Court appointed attorneys Justin Weber, Natalie Einsig, and Thomas Schmidt of Pepper Hamilton, LLP, to represent Plaintiff. (Doc. Nos. 89-91.) With the advice and consultation of his appointed attorneys, Plaintiff settled his claims with Spring Garden Township Officers Clevenger and Eisenhart prior to trial. (Doc. No. 134.) Plaintiff also voluntarily withdrew his claims against Defendant Doellinger shortly before trial. (Doc. No. 133.)

Trial began August 3, 2009. (Doc. No. 124.) On August 4, 2009, the jury returned a verdict in favor of Defendant Bartz, the only remaining defendant in the litigation. (Doc. No. 129.) Judgment was entered against Plaintiff and in favor of Defendant Bartz that same day. (Doc. No. 130.)

On September 9, 2009, Plaintiff's motion for new trial pursuant to Federal Rule of Civil Procedure 59 was received by the Clerk of Court. (Doc. No. 135.) Plaintiff filed the motion *pro se*. Although 37 days had passed from the date of the judgment, the motion was dated August 14, 2009, in two places. (Id. at 2-4.) Defendants responded to the motion on October 14, 2009. (Doc. No. 136.) No reply brief was filed.

## II. DISCUSSION

Plaintiff asserts five grounds to support his motion for new trial, though his precise arguments are unclear. The Court interprets them as follows:1) the jury verdict is not supported by the great weight of the evidence; 2) the Court erred in allowing the claims against all

2

Defendants except Defendant Bartz to be withdrawn; 3) the videographic evidence presented at trial proved Defendant Doellinger used excessive force; 4) the attendance of prison guards near Plaintiff and the admission of evidence related to other convictions resulted in an unfair trial and; 5) witness Renee Kutziller Snider's testimony is inadmissible because she was not the EMT who treated him on the day of the arrest. (Doc. No. 135 at 1-2.) Plaintiff's two-page motion presents no additional facts, argument, or explanation of these five claims for relief.

Before turning to the merits of these claims, the untimely docket date of the motion requires the Court to begin with a discussion of whether it has jurisdiction over the motion.

### A. Timeliness and Jurisdiction

Federal Rule of Civil Procedure 59(b) provides that a motion for new trial "must be filed no later than 10 days after the entry of judgment." Fed. R. Civ. P. 59(b)[2]. "The ten day period is jurisdictional," thus the Court cannot extend the deadline, even for good cause, if it finds that Plaintiff failed to file within the ten-day period. Smith v. Evans, 853 F.2d 155, 157, 161 n.3 (3d Cir. 1988) ("We emphasize that the district courts are without authority to act on untimely 59(e) motions."). In fact, the Rules explicitly provide that "a court must not extend the time to act under Rule[] 59(b) . . . ." Fed. R. Civ. P. 6(b).

In this case, Plaintiff's motion was post-marked September 8, 2009, and was not received by the Court until September 9, 2009, significantly past the ten-day deadline. The September 9, 2009, docket date does not end the matter in this case, however, because a *pro se* prisoner's filing is deemed filed the day it was placed in the prison mailing system rather than the date it is

---

[2]Effective December 1, 2009, the Federal Rules of Civil Procedure changed to allow 28 days for a party to file a motion for new trial. At all times between the entry of judgment in this case and the time of Plaintiff's filing, the time limitation in effect was 10 days.

received by the Court. Houston v. Lack, 487 U.S. 266 (1988) (holding that *pro se* prisoner notices of appeal are deemed filed at the time they are delivered to prison authorities for forwarding); Smith, 853 F.2d at 161-62 (applying the prison mail rule articulated in Houston to Rule 59 motions).

According to Plaintiff's certification of service, he deposited the motion in the prison mail system on August 14, 2009. While that assertion is dubious given that the postmark date on the envelope is over three weeks later—September 8, 2009—the Court accepts Plaintiff's sworn statement and finds that the motion was deposited in the prison mail on August 14, 2009. The Court deems the motion timely, giving it jurisdiction over the merits of the claims to which it now turns.

  **B.** **Great Weight of the Evidence**

Rule 59 allows a district court to grant a new trial in cases where "there is insufficient evidence to support the verdict or where the verdict was against the weight of the evidence." Greenleaf v. Garlock, 174 F.3d 352, 365 (3d Cir. 1999). It is unclear from Plaintiff's motion whether he is arguing that the verdict is unsupported by the evidence or against the great weight of the evidence. He states only that the "[j]uror's verdict didn't support the evidence." (Doc. No. 135 at 1.)

Considering the former interpretation, that there is insufficient evidence to support the verdict, Plaintiff's claim necessarily fails. Defendant Bartz testified at trial on his own behalf that no excessive force was used. He testified that he did not use excessive force against Plaintiff either in conducting the initial arrest at the Red Rose Lounge or at the holding cell at the Hellam Township Police Station. Though this testimony directly contradicted that testimony given by

4

Plaintiff at trial, the jury was entitled to entirely credit Defendant Bartz's version of the events. Moreover, Officer Doellinger testified that he did not observe Defendant Bartz using excessive force, and Officers Eisenhart and Clevenger corroborated the majority of Defendant Bartz's testimony. The record contains sufficient evidence to support the jury's verdict that excessive force was not used.

Considering the latter interpretation of Plaintiff's claim, that a new trial should be granted because the verdict is against the great weight of the evidence, such a motion can only be granted if the record shows "that the jury's verdict resulted in a miscarriage of justice or . . . cries out to be overturned or shocks our conscience." Greenleaf, 174 F.3d at 366. This verdict does not meet that standard. As stated above, there was ample testimony to support Defendant Bartz's account of the events. Defendant Bartz and the testifying officers put forward evidence that Plaintiff's injuries occurred because he was hit by a door not because he was kicked. They asserted that they forced a door open during their investigation of the burglary at the Lounge, not knowing that Plaintiff was hiding behind the door or that it would cause him injury. Defendant Bartz further explained that when he touched Plaintiff in the holding cell he did so to perform a "sternum rub," a demonstrated technique used to ascertain Plaintiff's level of consciousness.

Emergency Medical Technician ("EMT") Renee Kutzmiller Snider's testimony could have been adopted by the jury to support Defendant's testimony. She testified that while Plaintiff was bleeding from the lip, he did not appear to have facial trauma and his injuries appeared more consistent with him being hit with a door than being kicked multiple times. She also testified that a sternum rub is a painful stimulus applied to the chest, an acceptable medical technique for determining whether a victim is conscious.

By contrast, the evidence supporting Plaintiff's account of the facts was not overwhelming. Plaintiff testified that he was kicked multiple times in the face by Defendant Bartz, that his head was used "as a battering ram" to exit the Red Rose Lounge, and that, at the Hellam Township Police Department holding cell, Defendant Bartz punched him in the chest. (Trial Trans. 30-70.) His mother and step-father testified that his face was swollen and bloody the morning of the arrest, but they were unable provide any insight as to the cause of his injuries. (Trial Trans. 70-98.) Moreover, Plaintiff admitted to being so intoxicated prior to the arrest that he "passed out from the alcohol" at the Red Rose Lounge, thus giving the jurors ample cause to find his account of the facts unbelievable. (Trial Trans. 43-44.)

It simply cannot be said, based on the record presented at trial, that the great weight of the evidence favored Plaintiff or that the resulting verdict against Defendant Bartz is a miscarriage of justice.

### C. Dismissal of Defendants and Proof of Defendant Doellinger's Liability

Plaintiff next argues that the Court's acceptance of his settlement and stipulation of dismissal of Defendants Doellinger, Eisenhart, and Clevenger warrants a new trial. His third ground, that a video produced at trial "clearly proved" Defendant Doellinger used excessive force, will be taken as an argument in support of this claim.

The Court begins by emphasizing that it did not dismiss any named Defendants from this case. Rather, Plaintiff, aided by appointed attorneys, entered into a settlement agreement releasing Defendants Eisenhart and Clevenger from suit. A stipulation was later filed with the Court voluntarily withdrawing them with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1). (Doc. No. 134.) Prior to trial, Plaintiff also informed the Court that he stipulated to the

dismissal of Defendant Doellinger pursuant to Rule 41(a)(1)[3]. The Court had no basis to reject either of these dismissals. Indeed, a stipulation of dismissal pursuant to Rule 41(a)(1) is effective *without court order*. See First Nat'l Bank of Toms River v. Marine City, Inc., 411 F.2d 674, 677 (3d Cir. 1969) ("The entry of such a stipulation of dismissal is effective automatically and does not require judicial approval."); Concha v. London, 62 F.3d 1493, 1506 (9th Cir. 1995) ("The dismissal is effective on filing.").

Though evidence introduced at trial did show that Defendant Doellinger used force against Plaintiff which *may* have been deemed excessive by a jury, the issue is moot because Defendant Doellinger was no longer a party to the case at the time of trial.[4] The Court cannot simply order a new trial at this point as if Defendant Doellinger had never been dismissed. A Rule 41(a)(1) dismissal without prejudice has the effect of treating the suit against the dismissed party as if it had never been filed. Concha, 62 F.3d at 1506 ("Such a dismissal leaves the parties as though no action had been brought."). Therefore, any judgment entered after the dismissal of a party has no effect on the dismissed party. Accordingly, the evidence admitted into the record after Defendant Doellinger's dismissal from the case does not warrant granting a new trial.

---

[3]Although neither notice of dismissal was filed until August 25, 2009 (Doc. Nos. 133, 134), the Court was informed of the stipulations prior to the start of trial. The parties' understanding that Plaintiff was proceeding to trial solely with claims against Defendant Bartz is indicated by Plaintiff's Amended Pretrial Memorandum. (Doc. No. 123 at 3.)

[4]The revelation of this information at trial is likewise incapable of setting forth grounds for a new trial based on newly discovered evidence. Newly discovered evidence is only grounds for a new trial if discovered after the entry of judgment; the revelation of information during the pendency of trial is insufficient. See 12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][d] (3d ed. 2009).

### D. Prejudice

Plaintiff next argues that a new trial should be granted because he was prejudiced both by the marshals' attendance at trial and by the defense attorney's statements that he is currently incarcerated on other charges.

To begin, Plaintiff did not raise either issue of prejudice at trial and thus cannot prevail on a motion for new trial on these issues. Generally, a party is not entitled to receive a new trial for objections to evidence that he did not make at or prior to the initial trial, even if they may have been successful. Wilson v. Vermont Castings, Inc., 170 F.3d 391, 395 (3d Cir. 1999) ("[Plaintiff] has failed to preserve this claim for appeal because [Plaintiff's] counsel did not object to Vermont Castings's cross-examination of Wilson or its closing argument."); Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998) ("[I]t is clear that a party who fails to object to errors at trial waives the right to complain about them following trial."); Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 681 (3d Cir. 1980) ("[A] party may not seek a new trial on the basis of objections to evidence not brought to the court's attention at the original trial." (Citing Belmont Industries Inc. v. Bethlehem Steel Corp., 512 F.2d 434 (3d Cir. 1975)). The Third Circuit has recognized an exception to waiver only in cases where the alleged error is "fundamental and highly prejudicial error resulting in a miscarriage of justice." Wilson, 170 F.3d at 395-96 (internal citations omitted).

Plaintiff was not unduly prejudiced by the presence of marshals at his trial so as to effect a miscarriage of justice. The marshals' presence at trial was required because Plaintiff was incarcerated at the time of trial. Their presence in the courtroom, however, was purposefully minimized in that the marshals were dressed in business attire, they remained seated behind

Plaintiff, and they did not display authority over Plaintiff at any point within the jurors' purview. Plaintiff has not presented any fact or argument for the Court to find that the marshals' presence in the courtroom precluded him from having a fair trial.

Moreover, the admission of evidence concerning Plaintiff's criminal record for burglary, when considered in light of all testimony presented, did not effect a miscarriage of justice. By Plaintiff's own testimony and admissions, the civil rights violations occurred during the course of a burglary committed by Plaintiff. The parties stipulated to Plaintiff's plea of guilty for that crime and its admission. Defendant's reference to other burglary convictions hardly created insurmountable circumstances.

Indeed, Plaintiff's theory of the case relied in large part on relating Plaintiff's prior mistakes to Defendant Bartz's alleged mistakes in the early morning of March 28, 2002. Candidly acknowledging Plaintiff's prior mistakes, Plaintiff's attorney invited the jury to hold Defendant Bartz accountable for his misconduct despite his career as a police officer, just as Plaintiff was held accountable. In his opening statement, Plaintiff's counsel acknowledged Plaintiff's burglary of the Red Rose Lounge, also alluding to others, but reframed the issue by emphasizing Plaintiff's willingness to be held accountable for that misbehavior:

> Now, make no mistake, Mr. Ashford pled guilty to burglarizing the Red Rose Lounge. Mr Ashford, as you will hear, has made some mistakes before and he's been held accountable for those mistakes and he's paid and he has been held accountable to society and paid his debt.

(Trial Trans. 14.) Plaintiff's counsel then asked the jury to hold Defendant Bartz, a police officer, to the same standard Plaintiff had been held, ending his closing statement by saying, "I'm going to ask that you hold Officer Bartz responsible for those mistakes that he made on the

early morning of March 28, 2002." (Trans. 17.)

Plaintiff's Counsel reiterated this idea in direct examination, though he did not specifically refer to Plaintiff's other convictions. The testimony reads:

> Mr. Weber: And you pled guilty to some other burglaries in the past?
>
> Plaintiff: Yes, I have.
>
> Mr. Weber: And you have been held responsible for the choices that you made?
>
> Plaintiff: I have.
>
> . . .
>
> Mr. Weber: And you want to hold Officer Bartz responsible for the choices that he made on March 28th?
>
> Plaintiff: Yes.

(Trans. 41-42.)

Not only did Plaintiff's theory of the case serve to minimize any prejudice occurring from the admission of evidence of Plaintiff's prior and subsequent burglary convictions, but defense counsel did not unduly dwell on the outside convictions. Moreover, the case was a civil trial where Defendant Bartz was accused of wrongdoing, rather than Plaintiff. While inclusion of unrelated convictions can certainly still be prejudicial, the prejudicial impact evidence of prior convictions has on a civil Plaintiff is much less significant than it would be on a criminal defendant.

In consideration of the entire record, including the overwhelming evidence supporting the jury verdict, the Court finds that a miscarriage of justice did not result from the admission of evidence related to Plaintiff's burglary convictions or the marshals' presence in the courtroom

during the trial.

### E. Presentation of EMT Renee Kutzmiller Snider

Finally, Plaintiff argues that the EMT who testified at trial, Renee Kutzmiller Snider, was unknown to him and was not present for his treatment at the time of his arrest. Although he does not state his precise objection to her testimony, the Court takes it to be an argument that a new trial is warranted because her testimony is inadmissible or perhaps perjurous. This argument must also be denied.

First, Plaintiff made no objection at trial to the presentation of her testimony. Plaintiff had ample opportunity to challenge the admission of her testimony not only at trial, but prior to trial, as well. Defendant Bartz's pretrial memorandum, filed one month prior to trial, lists Kutzmiller Snider as a potential witness for the defense, and no objection was made. (Doc. No. 106 at 6.) Because Plaintiff never raised any objections to her testimony in the form of motions in limine or objections at trial, the argument is waived. See Waldorf, 142 F.3d at 629.

Moreover, submission of her testimony does not appear to be in error. Kutzmiller Snider's testimony indicated that she personally viewed Plaintiff's injuries as part of the EMS response team, though she was the "third EMT," and Theresa Snider was the "crew chief" who primarily attended to Plaintiff's injuries. (2d Trans. 11.) She further testified that the primary responder, Theresa Snider, could not be present in Court because she had passed away prior to trial. (Id.) Though Plaintiff's motion implies that Kutzmiller Snider perjured herself in that she was not actually present at the time of his injury, Plaintiff presents nothing more than his statement that "[s]he was not present on tip #20-20-131 date 3-28-02" in support of this allegation. The Court finds Plaintiff's bald assertion insufficient to suggest that the admission of

Kutzmiller Snider's testimony was an error, let alone one sufficient to constitute a miscarriage of justice. Plaintiff provides no support for his claim that her testimony was otherwise improper in any way. A new trial is not warranted on this basis.

## III. CONCLUSION

In conclusion, the Court finds that Plaintiff's motion was timely filed but that a new trial is not warranted in this case. For the foregoing reasons, Plaintiff's motion for new trial will be denied.

An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH WINSTON ASHFORD,** | : | |
| **Plaintiff** | : | |
| | : | Civil Action No. 1:04-cv-00642 |
| v. | : | (Chief Judge Kane) |
| | : | |
| **OFFICER BRUCE BARTZ, et. al.,** | : | |
| **Defendants** | : | |

## **ORDER**

**AND NOW**, this 20th day of January 2010, upon consideration of Plaintiff's motion for new trial (Doc. No. 135), **IT IS HEREBY ORDERED** that the motion is **DENIED.**

                                                S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania